The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Ms. Barrett? Ms. Barrett, I want to interrupt you, and I apologize for it. This is a very special occasion in the history of the 4th Circuit, and before you get to your argument, I hope the clerk won't charge you any time. This will be the last, in all likelihood, the last occasion for Chief Judge Gregory to preside over a panel of this great Court. For seven years, he served with distinction beyond measure for the 4th Circuit Court of Appeals. And Judge Motson and I have served with him since he was appointed initially by President Bill Clinton as an interim, there's a special title for that. Recess. Recess appointee. A recess appointee. The first recess appointment to a judgeship in the United States was made to Roger Gregory, the first one since Earl Warren was appointed to the Supreme Court by President Eisenhower. But Judge Motson and I are honored to be here today to serve on this panel, and I wanted to get that, make that point if I could, Judge Gregory, and I apologize for interrupting. Thank you, Judge King, for your kind words, and thank you, Judge Motson, for your friendship and collegiality over the years, both of you. And thank you very much. Judge King and I were arm wrestling about who would say that. But he is also now senior to me since I took senior status, you know. So he gets the honors, but it's a huge honor to be with Judge Gregory today. Thank you. I must say, if I'm seen today, it's only because I stand on two very strong, broad shoulders to my left and right. Thank you so much. Ms. Barrett. This is a drug trafficking case, as you know, out of Graham, North Carolina, Eastern District. It all started, as many drug trafficking cases do, with a traffic stop. And the appellant, Mr. I mean, yeah, the appellant, Mr. de Villa, was stopped for speeding as he left his home, and a search of his car ensued, and following that, a search of various houses that he had named as places that might have drug activity. It should be noted that he is not an English speaker. He strictly speaks Spanish. Everything has been interpreted or translated for him in this case since I've had it. I'm not sure that that happened all the way through the trial court, but it should have. And that could be a reason for assignment of error as well. He was charged based on statements from conspirators or confidential informants giving information that led to the indictment on three counts, possession, conspiracy of cocaine, and a gun charge, possessing a gun to further those crimes. He quickly signed a plea agreement and pled guilty to all three charges. Unfortunately, there was no factual statement written up or signed by either of the parties. So to look for the facts, we have to look at the hearings that took place before the Otherwise, we've got the statements that were given to the probation office by the government in preparation of the pre-sentence investigation report, and Mr. Davila did not sign off on any of that information. There was no factual basis to incorporate it into the plea agreement. That's a big problem for Mr. Davila because it's hard to say if there's not anything on the record. What did he do wrong? We're left with what did he do wrong? Well, we don't really know, but that is a potential problem that the court can resolve by sending it back for further proceedings. And I just want to point out that this is the entire record in this case. It has everything that happened in this case in these two little pamphlets. I don't think I've ever gotten a record on an appeal to the Fourth Circuit that had this few pages to it and said so little, and that is the biggest problem, that the trial court did not say enough. And to illustrate that, the plea hearing was combined with arraignment for Mr. Davila and another defendant. It's not clear whether that was one of his co-defendants, but that entire plea hearing started at 10.29 a.m. and ended at 10.24 a.m. on the same day. That was a total of fifteen minutes for arraignment . . . . . . and ended at 10.44 a.m. In 44? Mm-hmm. I thought you said 10.24. Okay. Forty-four. Fifteen minutes for the Rule 11 hearing? Yes. And that . . . And you claim that's an invalid Rule 11 hearing? Yes, I do. Not so much because . . . As to the conviction, that's your claim here? Yes. Absolutely. That the plea is invalid? That's right. That's right. The rules requiring what has to be covered in the plea hearing just weren't followed to the letter at all. Everything was summarized. It's unclear whether there was any conversation between the translator and Mr. Davila. I don't see how there could have been in fifteen minutes to have gone through anything. Did we review that for plain error? It wasn't preserved. You didn't claim to make this claim in the district court at all, did you? No. No. Okay. And then . . . What's that mean? What's that do to your claim up here? The fact that you wasn't raised? Well . . . No complaint about . . . Right. Right. . . . the propriety of the Rule 11 hearing in the district court. Exactly. But what we're saying is that he's got a right to due process, and due process wasn't had in this case. There just wasn't enough in the hearing . . . Well, if there's error in the hearing, wouldn't we . . . is there a question of whether it satisfies the plain error standards or whether it satisfies harmless error or something like that, if there was some kind of error? Plain error. The government's going to say what? I don't know what they're going to say. You don't know what they're . . . do you know what they're going to say in their brief? Oh, yeah. Yes. I do. I don't know what they're going to say today, but they've . . . What is their argument, as you understand it? Their argument is that everything was up to code in the hearing, that they're . . . that he pled guilty, and therefore, we can't question what happened at the hearing. That's their basic argument. Unless, of course, it rose to the level that it's not voluntary, right? That's your argument? Yes. And you'd have to do so in a plain error standard, but that's how high you'd have to jump to win. And so you're saying that the paucity of the time spent on the Rule 11 colloquy is in fact a fact that we should look at in terms of whether . . . and his English, not being able to speak English, those things should factor into the involuntariness. That's your position, correct? Yes. There was actually one point in that hearing where the judge asked him if he was in fact guilty, and he said yes, and then . . . but we don't know if that was with conference, after conference with his attorney or the translator, either one. And then there was a question about, so you actually committed these crimes, and he couldn't answer it. And the judge had to stop the proceedings for a moment. I don't know how long, but within the 15 minutes, if there was some stop for further conversation to clarify for him what the question was, and all that came back from that was his attorney said it's a language problem. I don't mean to get between, and certainly not, and you can just respectfully not comment on it, but I do want to know, your client understands if you prevail on what you're asking this court to do, does he realize he starts at zero again, that no plea agreement, none of those things are happening, and that . . . because the sentence here was . . . Well, you know what I'm talking about. Does he know that? That all . . . accepting responsibility and all those kind of things. Yes, sir. Yes, sir. That's a risk, isn't it? Well, the request for relief has two parts to it. Oh, yeah, the gun, you mean. Well, there's the gun charge that I addressed separately in the briefs, and in my opinion, the evidence did not prove that that gun was ever used by Davila at all, much less to further criminal activity. He was never even recorded or seen by anybody selling or receiving drugs. There's nobody that testified, although the government said there were many people that told them, but that's all hearsay. They didn't come and testify. There was no written affidavit from any of those people. They were, for the most part, unidentified, and I . . . in my opinion, that's not a factual basis for being convicted of that charge that carried a . . . You think he could be acquitted at trial then? Yes. You'd be willing to get a trial and plead not guilty and go to trial? I mean, that's where you could end up, and all this has history that you can get to maximum. That's a good point that you make, and it concerns me, and I'm always concerned about what would happen if I win, because I don't know if I would have done any good for the client. Not that . . . You're like the dog that caught the car. Yes, exactly. But in this case, I do think that there is not enough factual basis sufficient to convict on the gun charge, and I understand that he entered a plea agreement to all three charges, but his attorney was at fault, in my opinion, for letting him sign that agreement and encouraging him to sign that agreement. There's no ineffective counsel claim here. We don't have an ineffective counsel claim. Yes, we do. Well, we got a claim that the plea is bad. It's involuntary. I thought that's what you just said. A Rule 11 plea is defective because it was involuntary, but that's your claim. Yes. You want the conviction vacated on the basis that the plea is bad. I have several bases which you may reach that conclusion with. One is involuntary. One is lack of factual basis. One is lack of efficient, lack of counsel and ineffective assistance of counsel and the lack of... Ineffective assistance. Counsel is normally not considered on direct appeal. It would be very exceptional to get that into a direct appeal, but you do have a right to appeal and say that the plea is involuntary and you've been appointed. You mean you're going to raise whatever you need to raise and have it. Right. It's my understanding that's what you're trying to get at with respect to the conviction. The conviction is flawed because of the defective plea of guilty. Would you care to address the sentence? Yes. Okay. What we're asking is for the sentence to be vacated. I know what you're asking, but what I'm asking you to do is address your argument with respect to the sentence. Okay. Well, because he pled guilty to all three charges, the sentence contained concurrent sentences on the first two charges and then a mandatory consecutive sentence on the gun charge. And because the factual basis is insufficient on the gun charge, I'm of the opinion that the sentence on the gun charge should be vacated and the case sent back for resentencing on that point. I would, you know, whatever the court decides to do is what the court decides to do, but from where I stand looking out for the best interest of Mr. Davila, that charge should be vacated as well. Well, remember we asked you particularly to address Rogers. Do you have a Rogers argument you'd like to make to us? Yes. Yes. The Rogers argument was very revealing to me, I'll tell you that. I really especially appreciated the language that said that it's a complicated typology to figure out what special conditions of supervised release are mandatory and which ones are not mandatory. And I guess I counted on the district court in the written judgment to list mandatory and non-mandatory in separate places. As it turns out, they don't do that. And you have to go back and look at what the statute says is a mandatory. That's what the Rogers case did for me was to tell me what's mandatory and what's not mandatory as a condition. And if it's a non-mandatory condition of supervised release, then the Rogers case says it has to be announced at sentencing, at the sentencing hearing, so that the defendant has an opportunity to argue against it. And that wasn't done on several of the conditions. I think the government says that there's one condition that wasn't done on. Do you disagree with that? I do. Okay. Maybe you can tell us what conditions. It seems to me that's an important – at least I think I'm remembering the government's argument in that respect. I'm sure that's what the government argued. Okay. The mandatory conditions were, by statute, four of them, not to commit a – I'm almost out of time, but I'd like to finish. You may finish. All right. The four mandatory ones we don't have a problem with. Those were announced, not discussed, but announced at the sentencing hearing. Those were authorized by 18 U.S.C. 3583D. Then below that paragraph in the judgment was a list of what it called standard conditions of supervision, which aren't – doesn't really answer the question of what is mandatory and what's non-mandatory. Were they announced? Were they announced, those additional ones? No, they weren't. So that's what your question is, between announced and what was actually – he was actually sentenced to, right? Yes. And so how many of them are not announced? There are 13. Or 19, but anyway. 13 or 19. 13, okay. I said 13. Okay. There could be more. And so those – because those weren't addressed at the hearing, they're invalid and cannot be imposed unless it goes back for resentencing and the sentencing hearing is done properly. They're contrary to Rogers. That's true. And the relief you seek discussed in Singletary? Did you find that one? Let's see here. I may have Singletary. Well, that's all right. I didn't – it rings a bell, but I didn't discuss it. You want us to do what? To send it – to vacate the sentence and send it back for resentencing and to vacate the conviction on 9-21. If we don't vacate the conviction, what do you want us to do? Vacate the sentence, the whole sentence, and send it back for resentencing. Well, at resentencing, can't the district court correct the error? I'm sorry? If we send it back for resentencing, could the district court then correct the error? Yes, they could. But that doesn't mean that Mr. Davila isn't entitled to due process. No, no, no. I understand that. I would have thought maybe you had an argument that they couldn't do. No, I don't. But the biggest problem I have, you know, is that Mr. Davila is due to the same due process as every other criminal defendant. And the fact that this was handled so poorly at the hearings, it just enforces the public's opinion that the justice system is all screwed up and that particularly minorities have no chance of getting a fair trial. In this case, he didn't get a fair trial, so they're right. And I don't think that's a message that the court ought to send to the public. Any other questions? Ms. Barry, I just want to make it very clear, just in my mind. Other than the Rogers question, the argument you have, are you saying there's another way that you can win without having to be subject to a trial on the other two, the gun and the plea and those things? Because you said, well, I want the whole thing sent back for resentencing. Now, Rogers, as Judge Mott said, that could be corrected by then saying either they're gone for right now, but now I'm going to tell you exactly in court this condition applies. But the other two, if you win, can you avoid a trial? Don't you have to then be subject to being tried on the gun part? He would have an opportunity. Excuse me for interrupting. Mr. Davila would have an opportunity to renegotiate his plea, a new plea, with effective counsel, and I think that's what he deserves. Yes, that's true. He would perhaps have an opportunity, but, you know, might not be happy campers on the other side. That's a risk he took when he filed for appeal. Okay, that's all. Thank you, Judge Mott. Thank you. Thank you, Ms. Barry. Mr. Gibbons. Thank you, Your Honors. John Gibbons for the United States. I'd like to start off with the Rogers issue that Judge Mott brought up at the end of counsel's argument. First and foremost, as we said in our brief, we would argue that the Rogers issue has been waived. Obviously, the general rule is that any issue not raised in an opening brief is waived. Okay, so is that the basis for your waiver argument? Certainly. Is that the only basis for your waiver argument? Well, I mean, if you look at how this case progressed, Mr. Davila was sentenced nine days after the Rogers decision originally issued. So this argument has been available to him at every step of this case when his counsel filed the Enders brief, when he filed his own, and when counsel here filed the supplemental brief, and it was never raised. Why didn't the government raise it? I know you need to answer Judge Mott's question. I think in this case, the government had an obligation to raise it. That's my view of the duties of the prosecutors in this court and in the department. You have an obligation to do justice. Certainly. Over and above everything else. Absolutely, the department does have an obligation. Nine days before you knew what Rogers said. Basically, it's in, if you put these things in there, and they're not in the record, not specified, it's in sentencing in absentia, right? Of course, yes. That's what it is. I agree that the prosecution — I mean, no question the defense lawyers should have brought it up. No question at all. There's also no question the government should have brought it up, in my view. Well, I would certainly agree that the government has an obligation to do justice, but it is defended — You say that doesn't include telling the court what the controlling authority is. Well, we did tell the court what the controlling authority was in response to the supplemental briefing request. And it is defendant's obligation to raise the issues on appeal that he wants to raise. And there are strategic reasons why perhaps he wouldn't have wanted to raise this particular issue, because it would only get him a resentencing where he had already secured a very favorable plea deal. He was sentenced to 100 months plus the 60 months, which by statute must be consecutive to all other sentences. So that's 160 months total, where his guidelines was 180 to 235 plus the five years consecutive. So he's already secured a very favorable plea deal. It's very reasonable to say, I'm going to — you know, I have this great plea deal. I'm going to, you know, stick with what I have unless I can get a conviction knocked out, too. See, I hear you. And I think that's a fair argument. But in this case, the Rogers error, of course, is curable. So if you had made the argument and had gone back to the district court and the district court had — or you confessed error, gone back to the district court and the district court had done it correctly, that wouldn't be a problem in front of us, right? So it strikes me that the government might — it might be to your advantage ultimately. But I know it's hard at the time. Certainly. And, you know, I would also say that the defendant could have asked to amend the judgment as well when the judgment came out, compared it to the conditions and could have asked to amend the judgment. But that's not what — he wants a bigger benefit than amending the judgment. He wants to point to that as error. But you say, well, yeah, but that's curable. Well, and that's another reason why we think that the general waiver rule should apply here. There were multiple opportunities to raise this. The defendant, for whatever reason, didn't. And actually, if you look in the council supplemental opening brief, it says on page six, it says, the judgment was filed June 11th, 2020. And this is a quote, as handed down in court with no additional special conditions included. Now, obviously, if the court were to reach this, we would disagree with that. We believe that there is one condition that was not orally pronounced. But that just underscores the point that this argument was never raised. We don't know if, you know, based on the timing of the supplemental briefing order and the supplemental briefing, it's not even obvious from the submissions that defendant has had a chance to weigh in on whether he wants to pursue this argument. So the government's position is that this is waived. And going to the factual basis argument under the 924C charge, Judge King, you're absolutely right, because defendant did not waive these issues below. This is reviewed for plain error. And that's obviously a very high hurdle to jump over, like Judge Gregory was discussing. The district court also, in addition to the plain error, posture has a very deferential standard of review already. The district court is only required to be subjectively satisfied that a factual basis exists. And this court reviews that if objected to below for an abuse of discretion. So you've got that plus the plain error argument that counsel has to jump over here. What prong of plain error does the government rely on? For the factual basis argument, we would say that there was no error at all. No error. Yes, sir. If you look at the Lomax factors, which are. Prong number one. Prong number one, two, three, and four. If you look at the Lomax factors, they tell. So this is what the evidence at trial would. What kind of evidence could show that the firearm was possessed in furtherance of the drug crime? Lomax says you look at the type of drug offense, the type of gun, proximity to drugs and drug proceeds, accessibility of the gun, illegal possession, whether it was stolen, whether it was loaded in general circumstances. And you look at the whole record under the Supreme Court's case in Vaughan because this is on plain error. And so you see almost every single one of these Lomax factors we've got in the record. You've got a sprawling, so type of drug offense, sprawling interstate conspiracy, taking drugs from Mexico to Texas to here, with distribution quantities of cocaine and marijuana. I mean, these were a lot of drugs, kilograms of cocaine. This was not, you know, personal usage amounts. And the cases are clear that, you know, a high-level dealer is more likely to have a firearm in furtherance of a drug crime just because guns are tools of the trade in drug trafficking. The drug dealers have valuable products on them. They're the targets of robberies personally. And for obvious reasons, they can't call the police if a dangerous situation arises. And so it's, you know, based on the nature of the offense, we can, you know, that alone supplies a sufficient factual basis. You look at the type of gun. It was a handgun, which can be easily concealed, carried to transactions. It wasn't, you know, like a wall-mounted antique musket or anything. You look at proximity to drugs and the drug proceeds. It was found in the same room in the master bedroom of defendant's residence with $14,000 in cash. And defendant, we know from the PSR, had no other significant sources of income. You look at accessibility. It's in his master bedroom. Illegal possession. We know from the Rule 11 hearing that he was an unauthorized alien. And under 18 U.S.C. 922 G5A, his gun possession was illegal. You look at the general circumstances surrounding the possession. I mean, he was targeted as part— Excuse me, counsel. Where is it that it was in the master bedroom? It does not say specifically. Well, wouldn't that be important from a factual standpoint? You mean the low-max factors? Proximity is a physical element there, right? Sure. Why is that not in the record? Well, and at, you know, at trial, that would have been something that counsel could have— But the court needs to be convinced, even at the plea stage, that there are sufficient facts that make this a valid plea. Do you agree with that? Absolutely. Well, why is it in the record? Because that's the sine qua non, isn't it? How close was it? Now, I know the Fourth Circuit says that guns and drugs go hand-in-hand, so you don't have to make a strong argument on that. The Fourth Circuit precedent has done that for you. But it doesn't mean that every drug trafficker has one. So it is tempered by having this proximity aspect of it. Why wouldn't that be in the record? It's not in the record that it's in. Where is it? Well, I would give two responses to that, Your Honor. The first is that for a Rule 11 factual basis, the Fourth Circuit has said that the trial court doesn't need to replicate the trial that the parties have agreed to avoid. Absolutely. And so the fact that defendants— Of course, yes. But the fact that the defendant—and so this is my second point. The defendant wasn't contesting any of this information. He was pleading guilty. The district court asked him specifically, are you actually guilty? And he said, yes, sir. And so when you tell the court that it was found in the house— That won't do it for you. People don't understand what guilt is. They understand it on the elements. That's why you have the elements, at least before the court, on the record that the judge can determine you did it. Because normally they say, did you kill the person? Yes, I did. Are you guilty of homicide and you never prove anything about someone was murdered? Certainly you wouldn't say that's enough, right? Well, I would respectfully disagree that that wouldn't be enough, but we have more in this case. You don't have to agree with me. I was just wondering why is it not— Sure. Of course. And it wasn't—you know, the district court just needs to be subjectively satisfied. The prosecutor informed him that it was in the house, and the defendant wasn't contesting any of this. And so a reasonable district court could be subjectively satisfied, whereas if it had proceeded to trial, that's the kind of thing that you would get into on cross-examination. The only problem, though, you have is that that might be true in terms of a reasonable objective district court judge, but also you have an appellate court that is required to have enough evidence before it to make a reasonable and determined jurisprudential decision as to whether or not it was appropriate. And if we don't have enough, then that's a problem, isn't it? Yeah, absolutely. But the proximity isn't the only thing we have. Oh, I agree. Well stated, but that's one of the elements. Go ahead. I think you've answered my question. Sure, sure. And then the last one, looking at the general circumstances of the possession, counsel stated that this all started with the traffic stop, where the defendant was stopped. That's not entirely accurate. This was part of a larger investigation that made its way to defendant. And once the investigators had identified defendant, they stopped him, and he readily identified the eight pounds of marijuana in his car. He gave consent to search three residences in Alamance County. At one. It was corporation on steroids. There's no question about it. Yeah, exactly. At one, they found a pound of meth, a kilogram press with cocaine residue on it, and the defendant admitted to pressing five kilograms of cocaine recently. The second house, they found 43 pounds of marijuana. And the third house, the defendant's residence, was where they found the $14,000, the small amount of marijuana, and the handgun. There was no – counsel said Mr. Davila did not sign off on the PSR's information. But in the record, we have no objection to the PSR information. The U.S. proffered that he possess the firearm in furtherance. The AUSA specifically said that of his drug conspiracy. And even now, defendant doesn't challenge the factual basis for his drug crimes. He exclusively challenges the factual basis for his firearm crime. And then finally, on the factual basis issue under Carr, we've got the two-remedy rule, where if a Rule 11 issue goes to the defendant's state of mind, calls into question whether it was knowing or voluntary, then you allow him to withdraw the guilty plea. Here, where it goes to the district court's state of mind, whether the district court was sufficiently informed to accept the guilty plea, under Carr, the remedy is to remand to the district court to allow for further – another Rule 11 hearing for the government to offer further factual basis. And so even if – you know, obviously the government does not concede that there was a factual basis issue here. But even if there were, defendant would not be able to withdraw his guilty plea. The remedy would be to send it back for the government to put on this additional evidence. And then finally, moving to the Rule 11 cumulative error. Again, because defendant didn't raise this issue below, or seek to withdraw the guilty plea in the district court, it's reviewed for plain error. And as Judge Gregory correctly identified, this is cooperation on steroids. At every single juncture in this case, defendant was ready and willing to cooperate to minimize his sentencing exposure. He entered a written plea agreement, immediately waved a Miranda during the traffic stop and admitted having the marijuana in his car, gave consent to search three residences. He gave information about additional kilograms of cocaine he'd been involved with. And this – he signed a cooperation agreement relatively quickly after his indictment. And this is defense counsel's statement at the sentencing hearing. He was honest up front with the officers, honestly, more honest than they were asking for. He's shown a lot to the court that he intends to get out of it, it being the drug lifestyle, by basically telling on everybody he knows about, unquote. So because this is plain error, you can only reverse if he shows that the outcome of the proceeding would have been different. He wouldn't have pleaded guilty. And on this record, there's just no basis to say that defendant wouldn't have pleaded guilty, even if there were Rule 11 cumulative error, because he did everything he could at every step of the way to cooperate with the government. Can I ask you a couple questions about the procedural violations in the plea hearing? What remedy does he have to address those? Well, are you talking about the Rule 11 colloquy requirements? The whole thing. Okay. So if it were an issue with, you know, defendant's state of mind, so if it were an issue with whether he'd been informed of his right to plead guilty or not plead guilty, something like that in Rule 11a.1. Do you not see that there were some errors made by the district court here? It's those errors that I'm asking you. What venue does he have to address those? Well, you know, if pressed, the government would concede that there were, you know, some Rule 11 errors. There were Rule 11. You're being pressed. Don't you think you aren't being pressed? That's why you're up here. Well, I certainly feel pressed now. Well, you should be pressed. You know, there are certain things under Rule 11 that the district court has to inform defendant of. You told me 10 minutes ago there were no Rule 11 problems. But now you go ahead.  Sorry. No Rule 11 issues with the factual basis. You have a duty of candor to the court. With the factual basis. Also, not just to be fair, you have a duty of candor to the court. Absolutely. Let me clarify. I meant that there were no factual basis issues under Rule 11. The cumulative error, we would obviously concede not everything that the district court was supposed to say was said during the hearing. But, and I have the initial arraignment transcript with me. There was no prejudice to defendant, and we know that there was no other outcome because every topic that the district court missed was covered in his initial appearance and covered in his plea agreement. Now, the initial appearance transcript isn't part of the record because defendant didn't raise the Rule 11 issue as far as the elements of the plea colloquy. But we'd be happy to submit that to the court. But I can represent that the issues that should have been covered in Rule 11 were covered at the initial appearance. And so, defendant was aware of his right to plead guilty, of his right to go to trial. So, but they are requirements, right? Absolutely. So, the government can't, this can't be the rule that the government pursues in every case because it would be just ignoring what Congress or the Sentencing Commission or whoever laid out, or we. So, I guess I'm sort of searching for what the remedy is. And what you're saying is there's no remedy. Well, and that's in the rule itself. In Mitchell v. United States, the Supreme Court, you know, remanded for a new plea hearing because they found that Rule 11 hadn't been complied with. In response to that, the rules were amended to add the final provision that if, that any shortcomings in the Rule 11 colloquy are harmless error if they don't affect, you know, are to be disregarded if they're harmless. And so, right there built in is a harmless error rule where if, you know, if the district court comes up short and doesn't make all the statements in exactly the way that it should have, that if the defendant is not prejudiced, that it isn't disturbed on appeal. And you regard that as a limitless ticket to making an unlimited number of errors. Well, I wouldn't say it's limitless. The only limit is if you come to this ultimately affected something, right? Otherwise, because this is, I've never seen anything quite like this before, to tell you the truth. Were you counsel at the sentencing? I was not. And, you know, the government concedes that there were Rule 11 issues, but because there was no prejudice to the defendant. You haven't told us what those errors were yet. I just want to observe that. The government concedes there were Rule 11 errors. You haven't specified them. Sure. Have you said they were harmless? Yes, Your Honor. I mean, specifically, you haven't said, you haven't inventoried them and explained why each of them is harmless. Well, I am prepared to do that, but I do see I'm out of time. You don't want to do that. I could certainly do that. I said you don't want to do that, and you haven't wanted to do that. So if you, may I go on, Your Honor? You may. So if you go to Rule 11-1B, the district court has to inform the defendant of the right to plead not guilty or having already so pleaded to persist in that plea. That did not, that does not appear in the plea hearing. That was an error. That was an error. But the initial appearance, the magistrate judge informed. This was a plea hearing. That's what Rule 11 talks about, the plea hearing. Absolutely. A plea colloquy. Absolutely. But if a defendant was actually aware of the information, then it doesn't prejudice him. And at the initial appearance, the magistrate judge told him, at a later date, you will be asked to plead guilty or not guilty to the charges and the indictments against you. If you plead guilty, then there will not be a trial. You will be admitting you committed the crime or crimes charged. On the other hand, if you plead not guilty, then there will be a trial. And at the end, the magistrate asked the defendant specifically if he understood. Do you have a case for this circuit that says you can go back and rely on what was said at the initial appearance by the magistrate judge? In connection with the compliance with Rule 11? I do. I don't have it handy. I apologize. And I see my time is up. I'm willing to go through the whole rule if you'd like, but I — But you would recognize that there are a number of errors, correct? Yes. Exclude or several? There were more than one. Well, there were more than three. Correct? Yes. If there are no further questions, I believe my time is up. You're glad the clock has run, huh? All right, counsel, we'll let you go. Thank you. Thank you, Mr. Gibbons. Ms. Barrett, you have some time reserved. Yeah, I just need a minute. I wanted to clarify a couple of things that the government had to say regarding the gun and the factors that LOMAC says to apply to determine whether the gun was used, as that term is qualified. And he said that the gun was found in the bedroom of his home along with some cash. First of all, we don't — it wasn't really clear because there were three houses that were searched, which one is his home, but, you know, we'll go along with that and say that was his home. It doesn't say where in the home exactly the cash was, but they assume — It was found in the bedroom of his home. Not in the record. Not in the record. It just says in his home. It doesn't say where. And the government suggests that because it was found and that because Mr. Davila had no other means of income that it must have been — that the gun must have been there for the purpose of furthering his drug conspiracy. That's not true either because the PSI does point out that Mr. Davila was an experienced and qualified cabinetmaker and had a carpentry business, a shop, in Mexico and had worked for other employers while in this country doing carpentry. So, you know, $14,000 isn't a whole lot of money in the drug trade, first of all, and they don't pin any other money directly to him. There are just so many holes in the facts that I don't think that's a fair assumption to make regarding the gun conviction. And the fact that there was no objection made to the PSI — again, I fall back on the ineffective assistance of counsel as a cause for that and that if he had been effectively represented, there would have been some objections to that. The PSR says it was found in the best bedroom of his home, right? Well, never mind. We'll assume it does. I didn't think so, but I could be wrong. Okay, thank you. Do you have a question? Yeah. But, Ms. Barry, to be fair, I guess, to counsel who's not present, who's representing about the IEC claim, you have to put that in the context of how much he said about this wasn't just $14,000 in a bedroom that's undisclosed at the time of taking it. He sang like a canary. Let me show you what else I did. Over here, let me — I mean, don't just — how do you just ignore all that context? Text without context is pretext. So, I mean, how do you do that? I mean, that's not fair. I'm trying to get the best deal I can from somebody who's already been singing with all the notes in every verse and every stanza. I agree. Let's be fair. I know she is not here to defend themselves, but this is not a case like that where we just come with just finding a search warrant. It was preceded by, let me show you where everything is buried. Let me show you that. Let me tell you who else will help me do it. Right? Well, that's what's in the pre-sentence report.  The judge adopted the pre-sentence report. I'm sorry? The judge adopted the pre-sentence report. Yes, he did. So, that's the record. Okay. It's to your client's advantage not to say all those things out in public. Right? Did he really want to tell about how much he cooperated with them? You have to remember, too, that he wasn't an English speaker. I don't know how much he knew of what was happening at all, ever. Did you read his statement that was in Spanish, I guess, that was translated? Yes. Yes. Well, that's not inconsistent. Okay. I can see that. You keep saying he's not an English speaker. It doesn't get you so very far. Well, it may get you past the point of no return for him. It may. Anything else? I think that's it. Ms. Barrett, thank you so much. And I note that you're a court opponent. And I just want to say on behalf of the Fourth Circuit, we thank you so much. We rely upon lawyers like yourselves to take these cases. And I want you to know that we appreciate it very much. And Mr. Gibbons, of course, your able representation in the United States is also duly noted. We'll come down, greet counsel, and proceed to our next case.
judges: Roger L. Gregory, Robert B. King, Diana Gribbon Motz